Good morning, everyone. Welcome to the Court. We have, before Panel B this morning, we have four argued cases. Before Panel B+, we have two submitted cases, and that's a different case. We have a case number 05-5105, Porter v. United States. Mr. Schwartz, I just want to confirm what is reflected here on my list or my schedule. It shows that you've reserved five minutes for your rebuttal. Is that correct? That's correct, Judge Schultz. Okay, well, go ahead and start whenever you're ready. Good morning, Your Honors. May it please the Court. On behalf of Mr. Porter, there's a lot of grist for a number of mills in this case, but let me start with Yanko, because what better panel and what better judges to decide or to distinguish Yanko than Judge Schall and Judge Gargiara, who in fact wrote that decision. Yanko, as you know, was a little bit different in terms of its fact, because it dealt with the death. But the basic holding of Yanko is that you can't have a mental injury, which leads, in fact, to the actual result, be it a death or whatever the presentation is. And as you pointed out in the decision, Judge Schall, the LEAA, when they published their material in the Federal Register accompanying the regulation, said that there must be the stress must result in or was caused by a traumatic injury that was a substantial factor in the officer's death. In this case, there was a traumatic injury. It was an unquestioned traumatic injury. It played a major role in terms of his disability, but there was also this added presentation, this added feature, which was post-traumatic stress syndrome. It wasn't there in the record, and correct me, please, if I'm wrong, Mr. George, but I thought in the record there was some question about the extent of the trauma of the injury. The main concern appears to have been with respect to the back injury. Is that correct? That's correct. But there was some issue about really how severe this was given the circumstances of the incident, the automobile collision, one car at 20 miles an hour, another car at 5 or whatever, low speed, and then just reporting the hospital with a thumb injury. So there was some question. I guess what I'm saying is I recall the hearing officer at the Bureau of Justice Assistance determined that this was not a traumatic injury. And it seemed to me, at least on the face of it and looking at the record, that one could make a pretty good argument for the proposition that that was substantial evidence. Now, where do you think that finding that the hearing officer made is not supported by substantial evidence? Well, you're quite correct, Judge Schall, that in fact he made that finding. But you have to recall as well that when he made that finding, it was without the second expert. There were three medical experts on which the agency relied. All three of them agreed that in fact he had that injury. Now, there is, as you point out, a misdiagnosis. And we pointed to our papers precisely how he went to the hospital and he complained of his finger hurting, but he also complained of a back injury, and they just ignored that. At the hospital they ignored it. Yeah. And he came somewhat later, as pointed out, but of course with adrenaline in your system you're it's remarkable what veterans are able to do or soldiers are able to do for a short period of time. But that sounds like a fact issue. I thought your argument was that there was an error here in the fact finding because the wrong standard was applied and that the disability, even if the PTSD resulted from a traumatic injury. And I thought that you were suggesting that that was a legal error. I am, Judge Dyke, but I was responding to Judge Schall's question relating to is there not substantial evidence in the record which suggests that he really never had the initial traumatic injury. I think it's unquestioned among the three medical experts that he had that injury. It showed on the film. He was operated on it. If you look at the opinions, all three of which are there, they make the assumption that in fact that is true, that he had this condition. So I don't think there's anything in the record which suggests to the contrary except in much earlier medical opinion which in essence is explained away. And as you know under the substantial evidence test it takes almost nothing. It should be called the insubstantial evidence test for all practical purposes because anything in the record which allows him to make that decision or to rely upon some kind of evidence is sufficient. But in this case, the evidence was actually relied upon. I'm confused. Did the hearing officer say there was no traumatic injury? No, no. He said in fact that if it's stress or strain, it doesn't matter. He didn't reach the issue that you just raised. He merely said that if it's stress or strain it's not incorporated in the statute. But that's the issue that I'm talking about. If he made a legal error in saying that I'm not going to consider stress and strain here as part of permanent total disability because it's not covered by the statute, that raises a legal question. On the other hand, if he said even considering stress and strain, even considering the allegations of PTSD, I don't find it's a factual matter that there was permanent total disability, then you have a real problem because that's reviewed under a substantial evidence standard. Are you contending that he refused to consider the stress and strain because it wasn't a relevant factor under the statute? Well, that's correct, Judge Steik, but I think I'd have to disagree with your basic premise because you're not reviewing what the hearing officer said. You're reviewing what the director said in his report. Well, but the director incorporated the findings of the hearing officer. Well, that's correct, but he also didn't address the issue, and he's required on appeal to when we asked him to review it, and he did not address the issue of post-traumatic stress. I'm not understanding what you're saying. Are you arguing that the hearing officer and the director made a legal error here, or are you not arguing? I'm arguing that the hearing officer made a legal argument, and the director, in not addressing this issue, his opinion was legally flawed in that it was obtrusive and it was in a violation of the APA. Where do we find that the hearing officer said, I can't consider the stress and strain? By his not resolving it. Now, where? What page? I'm not entirely sure, although I'll probably be able to address this on rebuttal, but the evidence was presented, and he declined to address it. Well, the hearing officer's found that his finding was that the disability did not prevent Mr. Porter from performing any gainful work. That's correct. And that was his conclusion. And in terms of reaching the conclusion, there was testimony from Dr. Ammerman and the letter from all three medical experts which talked about post-traumatic stress syndrome. So isn't the issue really, Mr. Schwartz, the severity of the injury? I mean, there was some injury here, and what really the hearing officer found was, and it was affirmed by the director, and then affirmed by the director, that there was not an injury of such trauma that rises to the level of entitlement to recovery under the statute. Well, my problem with the way you articulated it is that if that is in fact the problem of the finding, then it's unlikely under the substantial evidence test that that would be incorrect. But that's not what he found. What he found was that there wasn't an injury, that he wasn't disabled based on his injury. It's a little bit different, because by that finding, what he was required to do was not make an independent factual finding. He was required to make a determination, and based upon those medical reports, which was the evidence in the record, based on those medical reports, make a determination. And if none of the medical reports reach the conclusion that he reached, then in fact there's a concern, or it's a violation of the APA. Or in the alternative, if in fact any of those medical reports were flawed, and he relied on those, again, it's a violation of the APA in being arbitrary capricious in those several other criteria. Mr. Schwartz, what is the review that the Court of Federal Claims must have on the administrative record? Do they do it the no vote? Do they do it on a substantive basis? Do they re-weigh the evidence? Well, it's in essence the same review that this Court has. It's not the same review that similar to a regular disability under the Merit Citizens Protection Board and the Veterans Administration, and you've had lots of decisions, unpublished decisions, as other members of the panel have, about that standard, which is almost no review at all. Well, under Rule 56-1, there is a case that was published by this Court back in April 2005 dealing with 56-1. Right. And there was also, I believe... The Bantam case was not cited in your blue brief. No. Because that's a standard review for Rule 56-1 type of proceedings below. Right, but there was also the Chaconne case, and in that case, if I recall, did not say anything different than what the Chaconne case said, which in essence is the standard of review is that the Court of Claims cannot look at the factual determination. They don't have de novo review. They have a very limited review, which is different than the normal summary judgment review. They have a very limited review on the administrative record, and it's in essence moral equivalent to the review standard that you have before you today. It's not a summary judgment standard review. No, no, it's not a summary judgment standard. In other words, we don't provide a record and alternative affidavits and then let the Court decide it on the paper. This is an administrative agency review, and the courts are very careful to ensure that on administrative agency reviews, they don't insert themselves into the process because they don't have the time, they don't have theoretically the expertise, although you probably do. They just don't want to be involved in that, and they're quite correct in taking that position. So it's not a strict or anything near a summary judgment review, and I believe I said that in my papers. Well, under the Bantam case, Rule 56.1 requires the Court of Federal Claims when making an analysis in the first instance to make factual findings from the record evidence as if we're conducting a trial on the record, as a trial on the record, and then we review the Court of Federal Claims for clear error, not for substantial evidence, but for clear error. Does that impact your position? Only to the extent it would probably destroy it. Well, take a look at Bantam, and I'll cite it for you. It's 404, Fed 3rd, 1346. Well, I'd have a problem looking at it between now and my rebuttal time. I'm sure. But I certainly take the Court's view, and in fact, the Court below did not carry out that process, and that would be an alternative grounds to remand it for the Court to look at it. Well, that's because the opinion was not published when the Court of Federal Claims had the case before. And I apologize to the Court for missing that. Normally, I would have, in my review, more current cases have caught that, but I just didn't get to that. Schwartz, thank you. You're into your, in fact, you've got about a minute and 45 seconds left in your rebuttal, but we'll give you your full rebuttal time when you come back. Thank you very much. We'll hear from the government now. Mr. Dalles-Anders? Thank you, Your Honors, and may it please the Court. Regarding the question that the panel had for Mr. Schwartz, I believe that the question of post-traumatic stress disorder came up in conjunction with some of Dr. Ammerman's statements and some of the other statements in the record that Mr. Porter was disabled because, in addition to his injury, also the rural nature of his domicile, the poor job prospects, and the fact that he also had these mental disabilities in occasional places is referred to as post-traumatic stress. What's your position that if you have a traumatic injury and PTSD results from it, and you're permanently and totally disabled as a result of that, does the individual come within the statute? Under those circumstances, as you've laid out, Your Honor, yes, they would come under the act if the PTSD was shown to be the result of a traumatic injury pursuant to the act and the PTSD diagnosis was laid out to be permanently and totally disabling. Okay, and did the hearing officer here reject the claim because he took a different view of the statute than you just did? Not at all, Your Honor. I don't believe there was any evidence in the record submitted by a psychiatrist or a psychological expert that Mr. Porter, in fact, suffered from post-traumatic stress disorder, and even if there were references in the record by doctors saying, oh, this other doctor has said that he has PTSD, there was nothing in the record indicating that it was permanent and total. There were references to a diagnosis back in 1992, but, you know, this is the hearing officer was in, I believe, 2000, so eight years later, nine years later, there was no indication that he was still suffering from post-traumatic stress disorder. What the cause of the post-traumatic stress disorder was, in fact, there's a reference in the record at page 135 saying that some incident at a Target store had triggered Mr. Porter's PTSD and caused him to be readmitted for counseling. It was the precipitating factor in the patient's need for admission to Sibley Memorial Hospital, and that was in 1998. But there's no— Yeah, but what you seem to be arguing is that there's sufficient evidence for him to reject the PTSD diagnosis, which, I guess, was made a decade before this time. Your Honor, the diagnosis itself was never—there's no diagnosis in the record. Yeah, I understand that there's insufficient evidence of the PTSD. I mean, I understand that argument, but the question is, is that the reason that it was rejected by the hearing officer, or did the hearing officer reject it on the statutory ground, which you admit is incorrect? I don't believe—I think we're talking past each other, Your Honor. The statutory ground that was stated was not— If the hearing officer said, I am not going to reach the question of whether it was PTSD here because I find it's irrelevant under the statute, that would be an error of law under your view of the statute, correct? If he stated, I'm not going to consider any evidence of PTSD, that would be an error, but I don't believe that's what the hearing officer found. I think the hearing officer said— I believe the hearing officer said that stress and strain are not compensable under the Act. And I think we're also—the hearing officer's opinion was actually reviewed by the head of the Bureau of Justice Assistance. The final agency decision was in the record at page 228? Yes, you're correct. Correct, Your Honor. Yeah, but he adopts the findings of fact by the hearing officer, right? So it's not as though we only look to the director's decision. No, Your Honor. I mean, he did adopt many of the findings. No, he adopted all of them. I don't believe that's correct, Your Honor, because— He says we hereby adopt the findings of fact by the hearing officer. The findings of fact, not the legal conclusions. Right. In fact, the hearing officer found that Mr. Porter—he made findings regarding whether or not Mr. Porter was a public safety officer and found that Mr. Porter was not a public safety officer. The BJA director said, I'm not going to reach that issue. I'm just going to decide this on the question of whether or not Mr. Porter was completely and totally disabled due to a traumatic injury in the course of the Act. But, Your Honor, the government's position is that the opinion was supported by substantial evidence. There's ample evidence by the two medical experts at Howard University Hospital that Mr. Porter was not completely and totally disabled within the meaning of the Act. The director of BJA properly included in his findings and in his conclusion, he relied on the lack of veracity of Mr. Porter in some of his statements. We've already discussed the post-traumatic stress disorder issue. And finally, we just talked about the reasonable doubt standard. The statute provides that—I'm sorry, the implementing regulation provides that reasonable doubt arising from the circumstances of the officer's death or disability should be Mr. Porter seeks to include not only the circumstances, the line of duty connection, which that applies to, but also seeks to have reasonable doubt as to whether or not Mr. Porter is completely and totally disabled. And we don't believe that's a proper reading of the regulation. Clearly, the medical evidence indicates that Mr. Porter was not completely and totally disabled. And although the BJA director found that the line of duty connection was tenuous at best, they did give him the benefit of the doubt and find that his injuries were connected to his line of duty injury. If you have no further questions, Your Honor, we— We'll have a question regarding the standard review, Mr. D'Alessandris. What is our standard review? I guess it's Banham, Your Honor. I apologize that we missed that also. Thank you. For those reasons and the reasons stated in our brief, we ask that the— Thank you, Mr. D'Alessandris. Thank you. Mr. Schwartz, you have your rebuttal. Thank you. I probably won't need it at all. Let me answer Judge Steik's question. In fact, as I attempted to say, what the hearing officer did is, if you'll see on the record of 214, he talks about the issue and he mentions a court of claim version of Yanko because for some reason he doesn't reach this court's decision in Yanko. And then on 216, he talks about it a little bit later but doesn't really resolve it. So he acknowledges its existence but doesn't apply it in terms of the disability determination. So under Judge Steik's matrix, it would be an error of law. Let me just also say that in terms of— But you say he doesn't reach it. What is the it he doesn't reach? In other words, he doesn't say specifically. In my view, the post-traumatic stress syndrome does not result in a disability. What he does is he points out that this is an issue and then doesn't address it in his conclusions or final determination. Also, in terms of that letter about the Target store, this was a recurrence apparently, as you'll see on page 135, of this underlying stress disorder, as Judge Ammerman put it. Let me also apologize again for not having addressed Vandam. And if the Court would like supplementary briefing on that, I'm sure that the government and I would be pleased to submit it. No, I don't think that's necessary. We have the case. Thank you very much. Thank you. The case is submitted. The second case that we'll hear oral argument—